UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARQUETTE TRANSPORTATION COMPANY, LLC, *in personam*, MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC, *in personam*, and M/V KEIFFER BAILEY, *in rem*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 5:26-cv-227-BJB<br><br>In Admiralty |

**UNITED STATES OF AMERICA'S VERIFIED ADMIRALTY COMPLAINT**

Plaintiff, the United States of America, for its Verified Complaint against Marquette Transportation Company, LLC, *in personam*, Marquette Transportation Company Gulf-Inland, LLC, *in personam*, and the M/V KEIFFER BAILEY, *in rem*, alleges, on information and belief as follows:

**NATURE OF ACTION**

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. The United States brings this action against Marquette Transportation Company, LLC, *in personam*, Marquette Transportation Company Gulf-Inland, LLC, *in personam*, and the M/V KEIFFER BAILEY and its barges under tow, *in rem*, to recover the estimated costs of repairing the Bank Grading Unit ("BGU") and its auxiliary Mooring Barge 7401, both of which

are owned and operated by the U.S. Army Corps of Engineers. The KEIFFER BAILEY with its tow of barges allided with the BGU and Mooring Barge 7401, damaging both.

3. The United States asserts claims in this case under the Rivers and Harbors Act, 33 U.S.C. §§ 408, 411 and 412, and the general maritime law.

**JURISDICTION AND VENUE**

4. The United States is authorized to file suit under 28 U.S.C. § 1345.

5. This Court has jurisdiction over the subject matter and the parties in accordance with 28 U.S.C. §§ 1331, 1333, and 1345.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) as to Marquette Transportation Company, LLC because it resides and maintains its principal place of business located at 150 Ballard Circle, Paducah, Kentucky 42001. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) as to Marquette Transportation Company Gulf-Inland, LLC because it regularly conducts business within the geographical boundaries of the Commonwealth of Kentucky and is therefore subject to this Court's personal jurisdiction under 28 U.S.C. § 1391(c)(1).

**PARTIES**

7. The United States is a sovereign nation authorized to sue under 28 U.S.C. §§ 1333 and 1345 and vested with the authority to bring this claim under 33 U.S.C. § 413 and the general maritime law. The U.S. Army Corps of Engineers ("USACE") is an agency of the United States.

8. The BGU and Mooring Barge 7401 are and were at all relevant times owned and operated by the United States, through the USACE.

9. Marquette Transportation Company, LLC (Marquette) is a Delaware Limited Liability Company.

10. Marquette's principal place of business is located at 150 Ballard Circle, Paducah, Kentucky 42001.

11. Marquette Transportation Company Gulf-Inland, LLC (Marquette Gulf-Inland) is a Delaware Limited Liability Company.

12. Marquette Gulf-Inland's principal place of business is in St. Rose, Louisiana.

13. At all times relevant to this action, Marquette Gulf-Inland regularly conducted business in the Commonwealth of Kentucky, by operating vessels on the Mississippi and Ohio Rivers within the geographical boundaries of the Commonwealth of Kentucky.

14. The KEIFFER BAILEY (U.S. Coast Guard Official No. 1253271) is a 78-foot long, 2,000-horsepower Z-drive towboat built in 2014.

15. The KEIFFER BAILEY is and was at all relevant times a vessel owned and operated by Marquette and/or Marquette Gulf-Inland.

16. The barges attached to the KEIFFER BAILEY are and were at all relevant times either owned and/or operated by Marquette and/or Marquette Gulf-Inland, or under the control of the KEIFFER BAILEY.

**GENERAL ALLEGATIONS**

17. The Mississippi River is a navigable waterway of the United States within the meaning of 33 U.S.C. § 408.

18. The BGU is a large, barge-mounted crane with a wire-drawn scoop that is mounted on Mooring Barge 7401. The BGU and Mooring Barge 7401 are specialized vessels used in support of bank grading operations which the government undertakes for the purposes of flood risk management. The vessel is used to shape and grade the riverbank prior to the placement of concrete squares, known as revetment.

19. The BGU and Mooring Barge 7401 are and were at all relevant times operated by a crew of USACE employees.

20. At the time of the incident, the BGU was deployed with Mooring Barge 7401, bulldozers, and other vehicles to work on a revetment assignment on the Mississippi River near Mile Marker 686, in Mhoon Bend, near Tunica, Mississippi.

**THE ALLISION AND DAMAGE TO THE BGU AND MOORING BARGE 7401**

21. On August 17, 2023, the U.S. Coast Guard issued a Mariner's Notice advising the public of revetment work at Mhoon Bend, Mile Marker 686.6, on the left descending bank of the Mississippi River, which was set to begin on August 18, and continue until August 31, 2023.

22. At the time of the incident on August 21, 2023, the BGU and Mooring Barge 7401 were stationary, having been moored to the east bank, *i.e.*, the left descending bank, of the Mississippi River near Mile Marker 686 at Mhoon Bend.

23. The M/V HARVEY SBISA, a commercial vessel, was performing work near the BGU and Mooring Barge 7401.

24. On the morning of August 21, 2023, the pilot of the HARVEY SBISA saw the KEIFFER BAILEY, with barges under tow, moving southbound on Mhoon Bend heading directly toward the stationary BGU and Mooring Barge 7401.

25. The pilot of the HARVEY SBISA became concerned that the KEIFFER BAILEY would collide with the BGU and Mooring Barge 7401. He radioed the KEIFFER BAILEY'S pilot in an effort to prevent the impending allision, however, the KEIFFER BAILEY's pilot responded that he would not be able to avoid the allision with the BGU and Mooring Barge 7401.

26. Several USACE employees were attending a morning safety meeting in a break room on Mooring Barge 7401 when the HARVEY SBISA's pilot called to warn that the KEIFFER BAILEY and its tow were about to strike the BGU and Mooring Barge 7401.

27. The USACE crew immediately left the meeting and stepped outside to observe the KEIFFER BAILEY and its barges fast approaching.

28. With an allision imminent, the USACE crew immediately dropped the mooring lines to help maintain control after the allision.

29. One minute later, at approximately 7:53 a.m., the head of the KEIFFER BAILEY allided with the stern of the BGE and Mooring Barge 7401, snapping mooring cables and shoving the BGU downriver.

30. The force of the allision shoved Mooring Barge 7401 approximately 75 to 100 yards downriver.

31. A videotape of the allision was recorded by the camera system of the HARVEY SBISA.

32. Immediately after the allision, USACE employees visually surveyed the damage, taking photographs and videotapes to document the damage, which includes, but is not limited to damage to Mooring Barge 7401, mooring cables, a shore power cord, and a gangway, and still may include damage to the BGU and associated equipment.

33. On September 13, 2023, the USACE Marine Design Center inspected the BGU and Mooring Barge 7401 to assess the damage caused by the KEIFFER BAILEY.

34. The USACE concluded that the damage caused by the KEIFFER BAILEY had to be repaired, at a cost of $225,094.81.

35. This estimate, which covers costs to repair Mooring Barge 7401, includes the necessary equipment, labor, supplies, and materials, but does not include the USACE's overhead and administrative expenses, which are also recoverable.

**COUNT I**
**THE KEIFFER BAILEY AND ITS BARGES UNDER TOW, *IN REM,* ARE STRICTLY LIABLE UNDER 33 U.S.C. §§ 408 AND 412 FOR DAMAGE TO THE BGU AND MOORING BARGE 7401**

36. The United States refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 to 35 of this Verified Complaint.

37. At all material times, the KEIFFER BAILEY and its barges under tow were vessels "used and employed" within the meaning of 33 U.S.C. § 412.

38. The KEIFFER BAILEY and its barges under tow, *in rem*, are strictly liable to the United States under the Rivers and Harbors Act for damage to the BGU and Mooring Barge 7401, in a final amount to be established at trial, to include pre-judgment interest and costs, as the Court may award.

**COUNT II**
**MARQUETTE, *IN PERSONAM*, AND MARQUETTE GULF-INLAND, *IN PERSONAM*, ARE STRICTLY LIABLE FOR DAMAGE TO THE BGU AND MOORING BARGE 7401 UNDER THE RIVERS AND HARBORS ACT**

39. The United States refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 to 38 of this Verified Complaint.

40. At all relevant times, Marquette and/or Marquette Gulf-Inland owned and operated the KEIFFER BAILEY.

41. At all relevant times, the barges under tow of the KEIFFER BAILERY were owned and/or operated by Marquette and/or Marquette Gulf-Inland, or at the very least were under the control of the KEIFFER BAILEY.

42. The United States is authorized to pursue an *in personam* claim under the Rivers and Harbors Act against the owners and operators of vessels that damage any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods. *Hines, Inc. v. United States,* 551 F.2d 717 (6th Cir. 1977).

43. Under the Rivers and Harbors Act, Marquette, *in personam*, and/or Marquette Gulf-Inland, *in personam*, are strictly liable to the United States for damage caused by the KEIFFER BAILEY to the BGU and Mooring Barge 7401, in a final amount to be established at trial, to include pre-judgment interest, and costs, as the Court may award.

**COUNT III**
**MARQUETTE, *IN PERSONAM*, AND MARQUETTE GULF-INLAND, *IN PERSONAM,* ARE LIABLE FOR DAMAGES TO THE BGU AND MOORING BARGE 7401 UNDER THE GENERAL MARITIME LAW**

44. The United States refers to and incorporates by reference, as though fully set forth herein, paragraphs 1 to 43 of this Verified Complaint.

45. The KEIFFER BAILEY and its barges under tow, as a moving vessel or vessels that allided with a stationary object, are presumptively at fault under the Oregon Rule. *The Oregon*, 158 U.S. 186, 192–93 (1895).

46. The allision and resulting damage to the BGU and Mooring Barge 7401 were proximately caused by the negligence of Marquette and/or Marquette Gulf-Inland and its employees, including but not limited to the crew of the KEIFFER BAILEY, of which negligence includes but is not limited to:

a. The failure of the captain, pilot, and crew of the KEIFFER BAILEY to exercise reasonable care in the operation of the vessel;

b. The failure of the captain, pilot, and crew of the KEIFFER BAILEY to properly navigate, maintain steering, control the vessel or otherwise prevent the allision with the BGU and Mooring Barge 7401;

c. The failure of the captain, pilot, and crew of the KEIFFER BAILEY to keep a proper lookout;

d. The failure of the captain, pilot, and crew of the KEIFFER BAILEY to maintain a safe distance from the BGU and Mooring Barge 7401;

e. The failure of the captain, pilot, and crew of the KEIFFER BAILEY to safely navigate through Mhoon Bend at River Marker Mile 686 on the Mississippi River;

f. Operating the KEIFFER BAILEY in a negligent manner;

g. Operating the KEIFFER BAILEY without a properly trained and competent crew;

h. Failing to properly vet and investigate the fitness of the pilot of the KEIFFER BAILEY; and

i. Other acts of negligence and/or fault to be established at trial in this matter.

47. The allision on August 21, 2023, and the resulting damages were directly and proximately caused by the fault, negligence, or want of care on the part of Marquette and/or Marquette Gulf-Inland.

48. As a direct and proximate result of Marquette and/or Marquette Gulf-Inland's negligence or gross negligence, the United States' BGU and Mooring Barge 7401 suffered damage in an amount to be proven at trial, to include pre-judgment interest and costs, as the Court may award.

WHEREFORE, the United States prays that the Court enter judgment against the KEIFFER BAILEY and Marquette and/or Marquette Gulf-Inland in the amount of all damages and losses sustained by the United States as a result of above-described allision, including interest, and costs.

DATE: August 11, 2026

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

William F. Campbell
Assistant United States Attorney
717 West Broadway
Louisville, KY 40202
Telephone: (502) 582-6773
Facsimile: (502) 625-7110
Email: Bill.Campbell@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

*/s/ Karleen F. Murphy*
KARLEEN F. MURPHY (CA Bar No. 197245)
Trial Attorney
JAMES R. WHITMAN (D.C. Bar No. 987694)
Senior Trial Counsel
United States Department of Justice
Civil Division, Torts Branch
Aviation, Space & Admiralty Litigation
Post Office Box 14271
Washington, DC 20044-4271
Telephone: (202) 616-3648
Facsimile: (202) 616-4002
Email: Karleen.f.murphy@usdoj.gov
James.whitman@usdoj.gov

*Attorneys for the United States of America*

VERIFICATION

Based upon information officially furnished to me, I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on August 11, 2026.

/s/ Karleen F. Murphy
KARLEEN F. MURPHY
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 14271
Washington, DC 20044-4271